It is admitted that the defendant has in possession fifty bonds of $10,000 each, issued by the plaintiff and payable to bearer, and also detached coupons of fifty other bonds issued by the plaintiff, amounting to some $200,000. These bonds were originally placed in the hands of the Treasurer, from whom defendant obtained them, under and by authority of two acts of the General Assembly, dated in February, 1859 and February, 1861. By these acts the Treasurer was authorized to deliver to the plaintiff a certain number of bonds with coupons attached, for which the plaintiff was to deposit a like number with the Treasurer; and it is further provided in said acts "that to secure the principal and interest of said bonds, issued by the Wilmington, Charlotte and Rutherford Railroad Company, the State of North Carolina shall, by this act, have *Page 91 
a lien upon all the estate of said Company, both real and personal." Under these acts an exchange was made of two hundred bonds of $10,000 each. By the Act of 1866 and ordinance of the Convention, the plaintiff was authorized to borrow money, not exceeding $2,500,000 by the issue of bonds, and to secure the same, execute a mortgage, "conveying its franchise and property, including its road-bed, c., c., and the mortgage so executed,c., shall have priority over any lien or claim held by the State," "and the State shall be in the position of a second mortgagee." Under an Act passed 25th February, 1867, the Treasurer was directed to subscribe on behalf of the State, one million of dollars to the capital stock of the Western Railroad Company, the defendant, to be paid in second mortgage bonds of the Wilmington, Charlotte and Rutherford Railroad Company. In payment of this subscription the bonds in litigation were delivered to the defendant in the year 1867 or 1868. The act further provides that the bonds above referred to, shall be "subject to the same equities the State now has."
By an Act of the General Assembly, ratified March 12th, 1870, the plaintiff was authorized to borrow money by an issue of bonds, not to exceed two millions five hundred thousand dollars, and execute a mortgage conveying its franchise, property, c., which, when executed shall have priority over any lien or claim held by the State in the property so conveyed.
The plaintiff alleges that the mortgage has been made and the Company is endeavoring to negotiate the bonds secured by said mortgage, and that they are second mortgage bonds. The complaint further states, that the defendant is endeavoring to sell the bonds above referred to, representing untruly
that they are second mortgage bonds and thereby interfering with the sale by the plaintiff of the second mortgage bonds issued under the Act of 12th March, 1871, and asks that the defendant be enjoined from negotiating, transferring or in any way disposing of the bonds or detached coupons. *Page 92 
Defendant claims that the State had a right to transfer these bonds in payment of her subscription. That they were so transferred; that they are held and claimed as second mortgage bonds and were delivered before the passage of the Act of 1870, and are not subject to any lien created by that act.
Upon application to Judge Russell, notice was issued to defendant to appear at Wilmington and show cause why an injunction should not issue. Defendant appeared, and the matter being heard, His Honor issued an order restraining the defendant from selling, transferring, c., the said fifty bonds issued by plaintiff, and the detached coupons, c. From which order defendant appealed to the Supreme Court.
The fact that the State of North Carolina has been exceedingly liberal in its efforts to aid a general system of internal improvements, is admitted by all.
How far these efforts have been judicious, is a matter upon which it is not ours to decide. The question before us is confined to the parties to this action, and to the legal rights and equities growing out of the very complicated legislation in reference thereto. We can only remark from a general view of the subject, that while the State has failed to attain its purpose, the General Assembly is charged with an unwarranted exercise of power, at the instance of one of the parties to the prejudice of the other.
We do not concur in the view taken on the part of the plaintiff, to-wit: That the effect of the exchange of bonds, was simply to put the bonds of the Wilmington, Charlotte and Rutherford Railroad Company, into the possession of the State as a mere depository or pledgee, and consequently, that the General Assembly had no power to dispose of them and the act transferring a portion of them, in payment for stock of the *Page 93 
Western Railroad was without authority, ultra vires and void. Thus leaving it in the power of the General Assembly afterwards by the Act of 1870, to subordinate these bonds, so attempted to be transferred in regard to the priority of the mortgage by which they were secured, to another set of bonds, which the plaintiff was by that act authorized to issue; and "so secure the payment of the same, by a mortgage which shall have priorityover any lien or claim of the State," the idea being, that as the General Assembly had no power to dispose of these bonds and the mortgage by which they were secured, the transfer vested no title in the Western Railroad Company, and was a nullity, and of course the General Assembly in 1870, had power to subordinate them by putting them on the footing of third mortgage bonds.
On the contrary, after a careful consideration of the many acts of the General Assembly, and of the ordinances bearing upon the question, we are of opinion that the legal effect of the exchange of bonds and of the mortgage, was to vest the ownership of the bonds in the State, secured by the mortgage.
Consequently the State had a valuable interest in their bonds and mortgage, as a fund which the General Assembly had power to dispose of in aid of any other work of internal improvement, or for any other purpose, subject of course, to existing equities, and the General Assembly did not, in transferring a portion of these bonds to the defendant, exceed its power as owner of the fund or act in bad faith to the plaintiff, as the act making the transfer, especially provides "for the transfer of these bonds as second mortgage bonds of the Wilmington, Charlotte and Rutherford Railroad Company; now held by the State, and secured by a mortgage upon all estate, both real and personal, belonging to said company, subject to thesame equities the State now has, ratified February, 1867; in other words the bonds and mortgage are transferred to the defendant, with the legal rights and equities of the State, and subject to the legal rights and equities of the plaintiff, existing *Page 94 
at the time of the transfer, it follows that the General Assembly had no power by the Act of 1870, to subordinate the bonds which had thus been transferred to another set of bonds, which by the latter act, the plaintiff was authorized to issue.
Indeed the Act of 1870, by its proper construction, does not purport to do so, for it only provides that these last bonds "shall have priority overany lien or claim of the State," and does not attempt to give priority over the bonds and mortgage, which the State had before transferred to the defendant.
This disposes of the case, for the gravamen of the complaint is, "that the defendant is now endeavoring to sell the said bonds, untrulyrepresenting them to be second mortgage bonds, and is thereby interfering with the sale by the plaintiff of the second mortgage bonds, issued under the Act of 12th March, 1870." Whereas, as we have seen, the defendant holds the bonds in question under a prior and valid transfer of the bonds and mortgage.
The question, whether these bonds in the hands of the defendant are subject to be redeemed by the plaintiff, under section 4, Act 1861, which provides that the plaintiff may at any time redeem from the Public Treasurer any number or portion of its bonds, "the same then being theproperty of the State by paying the par value thereof, or if the bonds of the State are below par, by paying therefor the same price as the State bonds command in the market — is not presented by the pleadings; there is no offer by the plaintiff to redeem the bonds — so it is a hypothetical case, which may never be presented, and the act under which the defendant derives title, especially provides that the transfer is made subject to all equities.
This is notice to all persons who may take title, from the defendant, derived under the Act 1867.
The plaintiff has no standing in Court upon that ground, nor are the provisions of this section set up as a ground for asking the interference of the Court.
ERROR. Order reversed. This will be certified. *Page 95